**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

GARY J. BESSETTE,

                         Plaintiff,

    v.                                                                             No. 09-CV-735
                                                                                  (TJM/DRH)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

---

**APPEARANCES:**                                  **OF COUNSEL:**

GARY J. BESSETTE
Plaintiff Pro Se
Apartment 2
99 John Street
Hudson Falls, New York 12839

HON. RICHARD S. HARTUNIAN          SUSAN J. REISS, ESQ.
United States Attorney for the           Special Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

     Plaintiff pro se Gary Bessette ("Bessette") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying his request for disability insurance benefits under the Social Security Act. Compl. (Dkt. No. 1); Suppl. Compl. (Dkt. No. 12). The Commissioner moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Dkt.

---

      [1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

No. 18. Bessette opposes the motion. Dkt. No. 19. For the reasons which follow, it is recommended that the Commissioner's motion be granted.

**I. Background**

On December 3, 1996, Bessette filed his first application for disability benefits "alleging disability since November 18, 1996 because of musculoskeletal, respiratory, and mental impairments." Dkt. No. 18-1 at 5. By a notice of decision dated April 23, 1999, the application was denied. Dkt. No. 18-1 at 4-11; see also Herbst Decl. ¶ 4(a). Administrative Law Judge ("ALJ") Stephan found that Bessette suffered from three severe impairments: alcohol abuse, musculoskeletal issues, and respiratory ailments. Dkt. No. 18-1 at 5, 9. ALJ Stephan found that Bessette's evaluations of his cervical and lumbar spine showed that he suffered slight exertional impairments but could still perform light duty work. Dkt. No. 18-1 at 6-8, 10. Additionally, ALJ Stephan concluded that Bessette's respiratory difficulties were minimal and that Bessette could continue to work so long as the environment did not expose him to respiratory irritants. Dkt. No. 18-1 at 6-8, 10.

On June 21, 1999, a letter requesting review of ALJ Stephan's decision was submitted on Bessette's behalf. Dkt. No. 18-1 at 15-16; see also Herbst Decl. ¶ 4(b). On March 11, 2000, the Appeals Council denied Bessette's request for review. Dkt. No. 18-1 at 17; see also Herbst Decl. ¶ 4(c). The letter instructed Bessette that, if he desired further court review, he needed to "commence a civil action . . . within sixty (60) days from the date of receipt of this letter." Dkt. No. 18-1 at 17. In a later filing, Bessette stated that he never appealed the denial. Dkt. No. 18-1 at 27. Bessette never commenced a civil action or applied for an extension for filing.

On August 2, 2000, Bessette filed another application for disability benefits. Dkt. No. 18-1 at 20-22; see also Herbst Decl. ¶ 4(d). On November 30, 2000, Bessette filed another application, with slight modifications to his marital and family information. Dkt. No. 18-1 at 23-25; see also Herbst Decl. ¶ 4(d). Both applications alleged an onset date of a disabling condition on January 23, 2000. Dkt. No. 18-1 at 20, 23; see also Herbst Decl. ¶ 4(d). On December 5, 2000, Bessette's applications were denied. Dkt. No. 18-1 at 26; see also Herbst Decl. ¶ 4(e). These applications were "duplicate[s] of the issue[s] previously decided because [Bessette] ha[d] no additional evidence to submit." Dkt. No. 18-1 at 29. On January 3, 2001, Bessette requested reconsideration of the initial denial. Dkt. No. 18-1 at 27; see also Herbst Decl. ¶ 4(f). On February 12, 2001, Bessette's request was denied. Dkt. No. 18-1 at 29-30; see also Herbst Decl. ¶ 4(g).

On April 12, 2001, a representative of Bessette filed a request for a hearing. Dkt. No. 18-1 at 31-32; see also Herbst Decl. ¶ 4(h). On July 12, 2002, the request was denied. Dkt. No. 18-1 at 33-38; see also Herbst Decl. ¶ 4(i). ALJ Stephan noted that Bessette alleged an onset date of disability of January 23, 2000 but that Bessette failed to meet the disability-insured status. Dkt. No. 18-1 at 37; see also Herbst Decl. ¶ 4(i). ALJ Stephan concluded that:

> Even if [Bessette] . . . alleged an earlier onset date, he would have to establish disability on or before December 31, 1998, the date on which he last met the insured status requirements . . ., but the decision of April 23, 1999 is binding with regard to the issue of [Bessette's] . . . disability through the date of that decision.

Dkt. No. 18-1 at 37.

On August 28, 2002, Bessette again requested a review of ALJ Stephan's hearing decision. Dkt. No. 18-1 at 39; see also Herbst Decl. ¶ 4(j). On October 11, 2002, Bessette's

3

request was denied by the Appeals Council.  Dkt. No. 18-1 at 40-41; see also  Herbst Decl. ¶ 4(k).  On October 22, 2002, Bessette's representative reapplied for benefits and requested that his hearing be reopened.  Dkt. No. 18-1 at 42-43; see also  Herbst Decl. ¶ 4(l).  On March 26, 2005, the request was denied because Bessette's recent applications "concern[ed] the same issues which were decided when an earlier claim was denied."  Dkt. No. 18-1 at 44; see also  Herbst Decl. ¶ 4(m).

On March 30, 2005, Bessette's counsel requested that the previous denial be reviewed.  Dkt. No. 18-1 at 49; see also  Herbst Decl. ¶ 4(n).  On May 16, 2005, ALJ Stephan dismissed the request on the ground of res judicata because Bessette already received "a previous determination . . . about rights on the same facts and on the same . . . issues, and this previous determination or decision ha[d] become final by either administrative or judicial action."  Dkt. No. 18-1 at 53; see also  Herbst Decl. ¶ 4(o).  On June 10, 2005, Bessette's counsel again requested review of ALJ Stephan's most recent unfavorable decision.  Dkt. No. 18-1 at 54; see also  Herbst Decl. ¶ 4(p).  On August 30, 2005, the Appeals Council denied the request for review.  Dkt. No. 18-1 at 56-57; see also  Herbst Decl. ¶ 4(q).

On October 16, 2007, Bessette "protectively filed an application for disability."  Herbst Decl. ¶ 4(r).  On October 24, 2007, the application was denied.  Dkt. No. 18-1 at 60-62; see also  Herbst Decl. ¶ 4(s).  Bessette filed a request for a hearing on December 12, 2007.  Dkt. No. 18-1 at 63; see also  Herbst Decl. ¶ 4(t).  On January 29, 2008, Bessette's request was denied, again citing res judicata.  Dkt. No. 18-1 at 68-69; see also  Herbst Decl. ¶ 4(u).  Bessette filed a request for review of ALJ Stephan's dismissal on February 12, 2008.  Dkt. No. 18-1 at 70; see also  Herbst Decl. ¶ 4(v).  On April 19, 2008, the Appeals Council denied Bessette's request.  Herbst Decl. ¶ 4(w); see also Dkt. No. 18-1 at 72-73.  This action

4

followed.

## II. Discussion

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1945 (2009) (citations omitted).

### A. Timely Filing of Federal Complaint

The United States, as a sovereign entity, is immune from suit under the Eleventh Amendment unless it consents to suit and the consent includes the jurisdiction of the court presiding over the suit. Makarova, 201 F.3d at 113 (citations omitted). "The doctrine of sovereign immunity is jurisdictional . . . and therefore to prevail, the plaintiff bears the burden of establishing that h[is] claims fall within the applicable waiver." Id. (citations omitted). In the case at bar, the express Congressional consent to suit can be found at 42 U.S.C. § 405(g), which authorizes judicial review of cases arising under Title XVI of the Social Security Act. Section 405(g) provides:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). It is clear from the statute that judicial review is only permitted in

accordance with the terms therein:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing.  No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided.  No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h).

Thus, the waiver of subject matter jurisdiction is limited to agency action which is a "final decision of the Commissioner . . . made after a hearing . . . ." 42 U.S.C. § 405(g).  To satisfy the administrative review process, making judicial review possible, a claimant must follow the process outlined in 20 C.F.R. § 404.900(a)[2].  See also Califano v. Sanders, 430 U.S. 99, 102 (1977) ("The Act and regulations thus create an orderly administrative mechanism, with district court review of the final decision of the [Commissioner]. . . .").  If the claimant fails to pursue these administrative rights, the administrative determination becomes binding.  20 C.F.R. §§ 404.905, 404.921, 404.955, 404.981.  Ordinarily, a claimant must exercise his rights under the administrative appeals structure within a specified time frame.  20 C.F.R. § 404.900(a).  However, upon a showing of good cause, an extension of time can be granted.  Id. §§ 404.909(b), 404.911, 404.933(c), 404.968(b), 404.982.

---

[2] To complete the administrative process, a claimant must first receive an initial determination.  20 C.F.R. § 404.900(a)(1).  If the claimant is dissatisfied with the determination, he or she may seek reconsideration of the initial determination.  Id. § 404.900(a)(2).  If the claimant is still unhappy with the decision upon reconsideration, he or she may request a hearing before an ALJ.  Id. § 404.900(a)(3).  The claimant may request additional review from the Appeals Council.  Id. § 404.900(a)(4).  Finally, the claimant may bring the claim to federal court for review.  Id. § 404.900(a)(5).

In this case, Bessette received his first application denial on April 23, 1999. On March 11, 2000, the Appeals Council denied Bessette's request for review. Bessette received notification that he had sixty days to petition the court for judicial review, but he failed to do so. Accordingly, the decision became final. Rather than file a complaint with the courts, five and eight months later Bessette filed additional disability applications. The applications, and requests for rehearings, were denied because they were duplicative of Bessette's application which had previously been determined and for which no additional or new evidence had been submitted. Ultimately these denials were upheld by the Appeals Council on October 11, 2002. Again, Bessette did not petition the federal court for relief. Therefore, the second decision also became the final decision of the Commissioner.[3] Bessette did not file a federal complaint until June of 2009, more than nine years after the first administrative decision became final and almost seven years after the second decision had become final.

Any requests for judicial review regarding the subject matter of these hearings is therefore untimely. Bessette's present complaint was filed years after the administrative decisions became final. This delay is much longer than the sixty day time frame provided to Bessette in the body of the Notices he received from the Appeals Council. The Second Circuit has upheld the sixty day time limit, holding that federal complaints which have failed to comply with the time frame are time-barred from judicial review. See, e.g., Wong v. Bowen, 854 F.2d 630, 631 (2d Cir. 1988).

---

[3] As outlined above, Bessette also received two subsequent denials from the Appeals Council in 2006 and 2008. However, both of those denials were with respect to the decisions denying hearings due to res judicata. For the reasons explained infra, those decisions are unreviewable because they do not represent final administrative decisions.

However, "the [sixty] day filing requirement is subject to equitable tolling . . . [which] requires a showing of both extraordinary circumstances and due diligence." Torres v. Barnhart, 417 F.3d 276, 279 (2d Cir. 2005) (citations omitted). Bessette has not argued that either of these situations are present in the current case. Bessette complains that the ALJ was prejudiced, he was unable to retain an attorney throughout the process, and that one of the attorneys that he did retain was ineffective. Dkt. No. 19. Despite these allegations, Bessette's demonstrated ability to continue to file applications and requests for review illustrate his capacity to file a claim with the district court. However, he failed to do so and, under these circumstances, judicial review of the 1999 and 2002 Appeals Counsel denials are time-barred.

Accordingly, the Commissioner's motion on this ground should be granted.

### B. Res Judicata

The doctrine of res judicata properly applies when an individual has received "a previous determination or decision under [the Act] . . . and this previous determination or decision has become final by either administrative or judicial action." 20 C.F.R. §404.957(c)(1). In such instances, the ALJ may "dismiss a hearing request entirely or . . . refuse to consider any one or more of the issues because [res judicata applies] . . . . " Id. Such a denial does not represent a final decision upon which administrative or judicial review may be requested. See, e.g., Hensley v. Califano, 601 F.2d 216 (5th Cir. 1979) (holding that attempted appeals regarding denials to reopen and decisions based on "res judicata are not reviewable.") (citations omitted); see also POMS GN 03101.080. Res judicata is appropriate where claimant has failed to offer "new and material evidence . . . which is of sufficient weight

8

that it may result in a different determination." Leviner v. Richardson, 433 F.2d 1338, 1343 (4th Cir. 1971).

In this case, there were four decisions issued by the ALJ. The first was issued after a hearing and contained a disability analysis which ultimately concluded that Bessette did not qualify for disability benefits. The second was also issued after a hearing and found that Bessette's two subsequent applications were to the first which had previously been denied on the merits. The third and fourth decisions denied Bessette's applications and requests for hearings based on res judicata. Neither the record nor Bessette's own assertions refute the findings that no new or material evidence was presented which would remove his claim from the preclusive effects of res judicata. Accordingly, the application of res judicata was appropriate. Therefore, the final two holdings may not be judicially reviewed because the dismissals were premised on res judicata and do not constitute final decisions.

The Commissioner's motion on this ground should be granted.

### C. Requests for Rehearings

"The Commissioner's decision not to reopen a prior determination is not a final decision for the purposes of §405(g), and thus is . . . unreviewable . . . [unless] the Commissioner has constructively reopened the case [or] . . . the claimant [w]as . . . denied due process." Byam v. Barnhart, 336 F.3d 172, 180 (2d Cir. 2003) (citations omitted). "If the Commissioner reviews the entire record and renders a decision on the merits, the earlier decision will be deemed to have been reopened . . . and . . . the claim is subject to judicial review." Id. (internal quotation marks and citations omitted). However, "a threshold inquiry into the nature of the evidence should not be read as a reopening of th[e] claim on the

9

merits." Id. at 181 (internal quotation marks and citations omitted). Due process violations occur when a claimant does "not receive meaningful notice [or] an opportunity to be heard." Parker v. Caifano, 664 F.2d 1199, 1203 (6th Cir. 1981).

In this case, neither exception applies to any of the numerous requests Bessette made to have the ALJ's decisions reopened.

### i. Reopening the Claim

First, Bessette has failed to establish that the ALJ constructively reopened his prior applications. Bessette has failed to contend, nor does the record support the conclusion, that the ALJ constructively reopened any of his prior applications. Liberally construing the facts in the light most favorable to Bessette, it could only be argued that the ALJ discussed the nature of the evidence which led to the initial determination denying disability benefits. As discussed above, this is insufficient to constitute a constructive reopening. As there was no further review of the record, none of Bessette's applications can be deemed reopened.

### ii. Constitutional Claims

Furthermore, Bessette makes no colorable constitutional claims of a denial of due process. Bessette essentially claims that he obtained ineffective assistance of counsel and was subjected to a biased ALJ . Dkt. No. 19.

### a. Ineffective Assistance of Counsel

Bessette's first claim is meritless because both the Southern and Eastern Districts of

New York have found that there is no constitutional right to competent counsel in a Social Security proceeding.  See Johnson v. Barnhart, No. 04-CV-5574, 2005 WL 2993933, at *3 (S.D.N.Y. Oct. 7, 5002) (citing Bovino v. Comm'r of Soc. Sec., No. 97-CV-2496, 1998 WL 812596, at *4 (E.D.N.Y. Apr. 8, 1998)); see also Garrison v. Comm'r of Soc. Sec., No. 08-CV-1005, 2010 WL 2776978, at *9 (N.D.N.Y. June 7, 2010) ("[T]here is a serious question as to whether this claim is even cognizable, given that several courts have concluded that there is no right to effective assistance of counsel in Social Security cases.") (citations omitted). Bessette has failed to proffer any authority to support his position.  Accordingly, Bessette has failed to allege a constitutional claim as he has failed to establish a constitutional right to competent counsel for his hearings.

Even if a cause of action did exist, Bessette's claim, even liberally construed, is limited to a single paragraph of conclusory statements.  The allegations fail to indicate which attorney was allegedly ineffective and in what matter.  Instead, Bessette's response concludes that "counsel . . . did not properly represent [Bessette], which may, in fact, have been the cause for the ALJ's bias and prejudice."  Dkt. No. 19 at 1.  Review of the ALJ's initial denial of Bessette's claims indicate a thorough discussion of the record, testimony, and the credibility accorded to Bessette, his physicians, and that of the state examiners.[4]  As such, Bessette has failed to proffer a plausible argument to suggest that his unnamed counsel did anything unprofessional or inadequate.

---

[4] No transcript was filed with the court.

11

**b. Biased ALJ**

"It cannot be disputed that litigants seeking Social Security benefits are entitled to have a fair and impartial decision-maker." Pronti v. Barnhart, 339 F. Supp. 2d 480, 491-92 (W.D.N.Y. 2004). To assess the impartiality of a decision-maker, courts have looked at the proceedings to determine if "the ALJ could . . . render a fair judgment, . . . [whether the] procedural safeguards were constitutionally inadequate, or . . . [whether the ALJ's behavior] shock[ed] the conscience." Efinchuk v. Astrue, 480 F.3d 846, 848-49 (8th Cir 2007) (citing cases).

In this case, there is nothing in the decision or Bessette's response to indicate that ALJ Stephan was biased against him. The decision was eight pages long and discussed the medical records and testimony at length, providing a reasoned conclusion. Bessette failed to complain about any part of the proceedings, including receiving notice or having an opportunity to be heard. Any such claims would be belied by the record which includes multiple pieces or correspondence between the Commissioner and Bessette indicating that he had notice of each administrative decision and his appeal options. Bessette also had representation for at least some portion of the administrative process. Furthermore, nothing in the 1999 decision, or subsequent denials or opinions, evidences behavior which shocks the conscience. Each opinion is fairly written and well reasoned. Lastly, even construing Bessette's contentions in the light most favorable to him, his conclusory allegations are insufficient to demonstrate a colorable constitutional claim. Therefore, the administrative decisions not to reopen Bessette's hearing remain unreviewable.

Accordingly, the Commissioner's motion should also be granted on this ground.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that the Commissioner's motion to dismiss (Dkt. No.18) be **GRANTED** and Bessette's complaint be **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); 28 U.S.C §636(b)(1); Fed R. Civ. P. 72, 6(a), 6(e).

DATED: December 14, 2010
        Albany, New York

_David R. Homer_
United States Magistrate Judge